**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Oct 14 2014, 9:46 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:
**JAY RODIA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON EARTHMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1404-CR-147 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPREME COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1307-FB-44856

**October 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Brandon Earthman received a twelve-year sentence for his role in a robbery. Earthman now appeals, arguing that the evidence is insufficient to support his conviction and his sentence is inappropriate in light of the nature of the offense and his character. Because we find the evidence is sufficient to support Earthman's conviction and his sentence is appropriate, we affirm the trial court.

**Facts and Procedural History**

Curtis Rogers left his girlfriend's house in the early morning hours of July 9, 2013, and began to walk home. At a gas station on his path home, a man approached him and asked for a cigarette. Tr. p. 13. When Curtis pulled out a package of cigarettes, two other men also approached. *Id.* One of the men, Rodney Pence, grabbed the cigarettes. *Id.* Pence told the defendant, Earthman, and the third man to search Curtis. *Id.* Earthman patted Curtis down, took his backpack, and removed his cell phone and wallet from his pockets. *Id.* at 13-14. The men told Curtis not to make any noise; Pence produced a knife and warned Curtis that "he was going to cut [him]." *Id.* at 15. They told Curtis to "walk straight and don't stop and don't turn around." *Id.* at 18.

Curtis began to walk away, but he then changed his mind because "he didn't want them to get away with taking [his] things," including his identification card, bank card, and social-security card. *Id.* at 18-19. He approached the men to ask for his belongings back, but when he did, all three men produced knives. *Id.* at 19, 36, 43. Curtis was scared and "didn't say . . . anything much after that." *Id.* at 19-20. Pence then told Curtis to give him his ATM pin. *Id.* at 20. Curtis gave Pence his pin, and Pence walked across

2

the street to a nearby ATM. *Id.* While Pence was gone, Earthman and the other man began to threaten Curtis, saying that they would "burn[] [him] with a cigarette," "knock[] [him] out," and "take[] [him] to an alley and torture[] [him]." *Id.* at 21. Pence was unable to withdraw money from the ATM with Curtis's bank card. Pence told Curtis to accompany him to another nearby ATM, but Curtis could not withdraw any money because his account balance was too low. *Id.* at 27. So the three men left, and Curtis went back to the gas station to call police. *Id.* at 28.

Indianapolis Metropolitan Police Department Officers responded to Curtis's call and located Pence walking on foot nearby. Pence had Curtis's cell phone and cigarettes. Officers brought Pence to the gas station, and Curtis identified him. *Id.* at 56. While this was happening, two men approached Pence and began talking to him. *Id.* at 57. An officer realized that one of the men matched Curtis's description of Earthman, and Curtis identified the man, Earthman, as one of the robbers. *Id.* at 59.

The State charged Earthman with Class B felony robbery, and a jury found him guilty. At his sentencing hearing, the trial court found twenty-four-year-old Earthman's "substantial criminal history"—including felony convictions for criminal confinement and dealing in marijuana, misdemeanor convictions for domestic battery, invasion of privacy, resisting law enforcement, theft, and dealing in marijuana, numerous juvenile adjudications, and probation violations—and his failure to show remorse as aggravating factors. The court found no mitigating factors. *Id.* at 114-15. The court sentenced Earthman to eleven years in the Department of Correction, followed by one year in a community-corrections program.

Earthman now appeals.

## Discussion and Decision

Earthman contends that the evidence is insufficient to support his conviction and his sentence is inappropriate in light of the nature of the offense and his character.

## I. Sufficiency of the Evidence

Earthman argues that there is insufficient evidence to support his conviction for Class B felony robbery. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

To convict Earthman of Class B felony robbery as charged in this case, the State was required to prove beyond a reasonable doubt that Earthman, while armed with a deadly weapon, knowingly or intentionally took Curtis's property by using or threatening to use force against him or by putting him in fear.[1] *See* Appellant's App. p. 22-23 (charging information). The force exerted to commit a robbery must be used before the defendant contemplates taking the property from the victim. *Young v. State*, 725 N.E.2d

---

[1] *See* Ind. Code Ann. § 35-42-5-1 (West Supp. 2013). Earthman committed the offense before the amendments to the criminal code took effect in July 2014. The changes to the criminal code do not impact our analysis.

4

78 (Ind. 2000).  However, our Courts have held that when the robbery and the violence are so closely connected in point of time, place, and continuity of action, they constitute one continuous scheme or transaction.  *Hoover v. State*, 918 N.E.2d 724, 733 (Ind. Ct. App. 2009) (citing *Young*, 725 N.E.2d at 81), *trans. denied*.

Such continuity of action was present in this case.  After Pence approached Curtis and grabbed his package of cigarettes, Pence told Earthman and another man to search Curtis.  Earthman patted Curtis down, took his backpack, and removed his cell phone and wallet from his pockets.  The men told Curtis not to make any noise; Pence produced a knife and warned Curtis that "he was going to cut [him]."  Tr. p. 15.  But this was not the only force threatened: Curtis decided to confront the men and ask for his belongings back, which presented a problem for the men.  As a result, all three men produced knives, and Pence told Curtis to give him his ATM pin.  Curtis was scared and "didn't say . . . anything much after that."  *Id.* at 19-20.  When Pence took Curtis's bank card to a nearby ATM, Earthman and another man threatened to burn Curtis with a cigarette, knock him out, and torture him in a nearby alley.  *Id.* at 21.  From this, we conclude that the fact-finder could reasonably find Earthman guilty of Class B felony robbery.

## II. Inappropriate Sentence

Earthman also argues that his sentence is inappropriate.[2]  The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing

---

[2] In discussing the appropriateness of his sentence, Earthman argues that the trial court failed to identify and properly weigh certain mitigating factors.  Earthman has waived this claim by failing to provide cogent argument for it.  *See King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (inappropriate sentence and abuse-of-discretion claims are to be analyzed separately); Ind. Appellate Rule 46(A)(8) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.").  Waiver notwithstanding, we cannot say that the trial court erred.  Even if the

decisions. *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). We implement this authority through Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.* Earthman bears the burden on appeal of proving that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). These tools include probation, home detention, placement in a community-corrections program, executed time in a

---

court found Earthman's bipolar diagnosis—the only alleged mitigator argued at sentencing—to be a mitigator, we can say with confidence that the court would have imposed the same sentence. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). The court made it clear in its sentencing statement that Earthman's significant criminal history and lack of remorse warranted an enhanced sentence. Moreover, we may not review the weight assigned to aggravators and mitigators by the trial court. *Id.* Nonetheless, a court's description of aggravators and mitigators is useful to our analysis when reviewing the appropriateness of a defendant's sentence.

Department of Correction facility, concurrent rather than consecutive sentences, and restitution/fines. *Id.*

At the time of the offense, the sentencing range for a Class B felony was between six and twenty years, with an advisory sentence of ten years. Ind. Code Ann. § 35-50-2-5 (West Supp. 2013). The trial court sentenced Earthman to eleven years in the DOC and one year in a community-corrections program. This sentence is within the statutory range.

Concerning the nature of the offense, Earthman robbed Curtis while armed with a knife. Although the offense is not particularly egregious in that the crime was brief and no one was injured, it is Earthman's character that supports his sentence: at only twenty-four years old, Earthman has a significant criminal history, including felony convictions for criminal confinement and dealing in marijuana as well as misdemeanor convictions for domestic battery, invasion of privacy, resisting law enforcement, theft, and dealing in marijuana. Presentence Investigation Report p. 6-9. He has violated probation many times, and he has juvenile adjudications for what would be robbery, theft, battery, and disorderly conduct if committed by an adult. *Id.* at 4-6, 8-9. Even a minor criminal history reflects negatively on a defendant's character. *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014) (citation omitted), *trans. denied.* Here, despite his numerous contacts with the criminal-justice system, Earthman has not been discouraged from engaging in criminal activity. Earthman has failed to persuade us that his sentence is inappropriate.

Affirmed.

7

FRIEDLANDER, J., and MAY, J., concur.